UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FELIPE GARCIA,** <br> Petitioner, <br> v. <br> **MATTHEW CATE, Secretary,** <br> Respondent. | CASE NO. 07cv1869 JAH (PCL) <br><br> **REPORT & RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**INTRODUCTION**

    Petitioner Felipe Garcia ("Petitioner"), a state prisoner, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction following a jury trial in San Diego Superior Court on January 26, 2005. Petitioner presents four issues: 1) whether Petitioner was denied his rights to Due Process and a fair trial because members of the jury saw Petitioner in shackles; 2) whether the trial court had a *sua sponte* duty to instruct the jury pursuant to CALJIC No. 1.04 when a defendant is observed in shackles; 3) whether the state appellate court's opinion was unclear and forced petitioner to represent himself; and 4) whether the harassment Petitioner allegedly suffered at the hands of the deputy sheriffs in jail violate his right to self-representation and a fair trial. This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(c)(1)(c) for Proposed Findings of Fact and Recommendation for Disposition. For the reasons set forth below, the Court respectfully recommends that the petition be DENIED.

## II.

## BACKGROUND

**A.     Statement of Facts**

Under 28 U.S.C. § 2254(e)(1) (2008), the state court's factual determinations are presumed to be correct unless Petitioner rebuts the presumption by clear and convincing evidence.  Petitioner has not alleged that the factual determinations made by the state court in this case are incorrect.  Therefore, the following facts of Petitioner's conviction are taken verbatim from the California Court of Appeal's 2006 Opinion upon Petitioner's Writ of Habeas Corpus and Petitioner's direct appeal from conviction:

> The prosecution's evidence at trial established that in January 2002, while Garcia was in Fidel Mora's apartment with Mora, Marcos Garcia (Marcos) and Macio Watts, Garcia pulled out a gun and ordered Marcos to tie up Watts with a lamp cord.  Garcia then took Watts's car keys and drove off in Watts's car.  Before leaving, Garcia took the phone from the apartment and threatened to hurt anyone who called the police.  Watts later recovered his car with several items missing from it.  Mora, Marcos and Watts testified at trial and identified Garcia as the perpetrator.  The jury convicted Garcia of carjacking and first degree robbery.

(Supp. Lodgment 8 Opinion at 2-3.)

Before the trial at issue in this appeal, an earlier jury had already found Garcia guilty of similar charges.  (Id. at 3.)  An information charging Petitioner was originally filed on April 16, 2002.  (Doc. No. 1 Ex. C at 1.)  The trial was first set to commence on August 12th; however, in July, Petitioner filed a letter with the court requesting to represent himself.  (Id. at 1-2.)  The trial was then continued. Petitioner also filed a motion to disqualify the judge, which was granted.  (Id. at 2.)   Presumably lost in the paperwork shuffle between the disqualified judge and the replacement judge, Petitioner's request to represent himself was never ruled on.  (Id. at 3.)  Nonetheless, the trial began on September 10, 2002, ending in convictions.  Petitioner was sentenced to twenty-two years in prison, a sentence he immediately appealed based on the neglected motion.  (See id. at 1.)

The California Court of Appeal reversed the judgment, sending the parties back to the trial court "for a hearing on whether Garcia is competent to represent himself and knowingly wishes to do so." (Id. at 6.)   The Court of Appeal further instructed: "If the court finds he is competent to represent himself, it shall hold a new trial.  If the court finds Garcia is not competent to represent himself or knowingly chooses not to do so, the jury verdict and sentence will take effect." (Id.)

> Garcia chose to represent himself on remand, assisted by privately retained cocounsel. A jury panel was selected, and trial was set to begin. However, before the trial began Garcia sustained serious injuries from an assault in jail. The injuries included a shattered jaw, a broken collar bone, and injury to Garcia's eyes and back. According to Garcia, the injuries also included impairment to his memory and his ability to focus. Because of Garcia's injuries, the jury panel was dismissed and the trial was continued for several months.
>
> When the proceedings resumed, the trial court held two lengthy hearings at Garcia's request to determine whether, in light of his recent injuries, Garcia would continue to represent himself.

(Supp. Lodgment 8 Opinion at 3-4.) These hearings were requested by Petitioner via letter to the trial judge voicing concerns over his ability to continue his self-representation because of his recent injuries. (Supp. Lodgment 2, 1 RT at 3-4.)[1] At these hearings,

> The trial court made it unequivocally clear that it was Garcia's choice whether to represent himself at trial. In the trial court's view, although [the Court of Appeal's] opinion remanding the action had stated that '[i]f the court finds Garcia is not competent to represent himself or knowingly chooses not to do so, the jury verdict and sentence will take effect,' that direction applied only to the circumstances immediately following remand. The trial court viewed Garcia's recent injuries as a *new* circumstance to be dealt with by giving Garcia the right to elect whether to continue with his self-representation. With this understanding, Garcia chose to continue to represent himself, and the trial proceeded.
>
> During trial, Garcia was not physically restrained while in the courtroom and was dressed in civilian clothing. Before trial began (and before Garcia sustained his injuries), the court explained to Garcia that jurors might see him in custody while he was being transported within the courthouse. The trial court inquired whether Garcia would like it to instruct the jurors not to draw any inferences from Garcia's custodial status. Garcia requested that the trial court not give such an instruction. After the delay caused by Garcia's injuries, the trial court again addressed the issue. The court reminded Garcia that although it would 'make every effort to minimize [Garcia's] exposure to the public as he's brought to and from the courtroom, there's no guarantee that some of our jurors won't see him while he's being transferred back and forth through the courthouse, because at that time he's restrained, and it's fairly obvious he's in custody.' The trial court told Garcia it would not mention his custodial status 'unless you want it mentioned.' Garcia again did not request that the jury be instructed regarding his custodial status.
>
> During trial, Garcia brought to the court's attention that on two separate occasions jurors had seen him in restraints while he was being transported to the courtroom. On the first occasion, according to Garcia, several jurors saw him in chains and shackled to other inmates as they were being transported to the courthouse in the morning. On the second occasion, according to Garcia and confirmed by the bailiff, one juror saw Garcia being led into the main courthouse hallway with his hands in chains during the lunch hour. The trial court twice asked Garcia if he wanted it to do anything in response to these incidents. Garcia again did not make a request that the jury be instructed regarding his custodial status.

---

[1] The Reporter's Transcript on Appeal is comprised of 16 Volumes and citations to the Reporter's Transcript on Appeal, which constitute Supplemental Lodgment 2, will be referred to as "RT."

(Supp. Lodgment 8 Opinion at 4-5.)

It should also be noted that at the sentencing hearing following the conclusion of trial and a guilty verdict, Petitioner raised several concerns on the record namely that he had been "having problems with the deputy sheriffs." (Supp. Lodgment 2, 16 RT at 2172.)

In the end, Petitioner was found guilty of and sentenced to prison for eighteen years, for carjacking in violation of California Penal Code § 215(a) and robbery in violation of § 211. (See Supp. Lodgment 8 at 1-2.)

### B.  State Court Proceedings

With assistance of counsel, Petitioner appealed the convictions; however, on August 31, 2006, the California Court of Appeal denied his appeal. (Supp. Lodgment 8.)  Next, Petitioner filed a petition for review with the California Supreme Court.  Petitioner raised two issues: 1) whether Petitioner was denied his rights to Due Process and a fair trial because members of his jury saw Petitioner in shackles; and 2) whether the trial court had a *sua sponte* duty to instruct the jury pursuant to when a defendant is observed in shackles. (Lodgment 3 at ii.)

Unaided, Petitioner also filed a second "petition for review." (Lodgment 2.)  This challenge presented four questions to the Supreme Court: 1) whether the state appellate court's opinion was unclear and forced petitioner to represent himself ; 2) whether the trial court was obligated to clarify a previous opinion of the state appellate court and guarantee Petitioner a new trial; (3) was the trial judge qualified to evaluate petitioner's medical and psychiatric well-being to determine his competence to represent himself; and (4) did the harassment Petitioner allegedly suffered at the hands of the deputy sheriffs in jail violate his right to self-representation and a fair trial.  (Id. at 2.)  On November 15, 2006, in a single sentence, the California Supreme Court denied both petitions for review.  (Lodgment 4.)

### C.  Federal Court Proceedings

Petitioner filed the instant petition for a federal writ of habeas corpus on September 24, 2007 setting forth four claims.  The petition claims that Petitioner suffered a violation of his federal right to procedural due process (1) when members of the jury saw Petitioner in shackles in the courthouse; and (2) when the trial court failed to *sua sponte* give a jury instruction regarding Petitioner's custodial status.  Petitioner also claims his right to self-representation was violated (3) when he was "forced" to

represent himself on remand due to the wording of the Court of Appeal's decision; and (4) through interference by the sheriff's deputy in charge of pro per inmates during his trial. (Doc. No. 1).[2]

An Answer to the Petition was filed on August 11, 2008. Respondent basically asserts that Petitioner has failed to present a viable claim because he cannot show that the state court's resolution of his claims was unreasonable. (Doc. No. 12-2 P. &. A. at 5.)

Petitioner did not file a traverse following the Answer to the Petition in this case.

## III.
## DISCUSSION

### A.  AEDPA

Title 28 U.S.C. section 2254(a), allows for review by a district court of "the judgment of a State court only on the ground that [the habeas petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2008). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. Lindh v. Murphy, 521 U.S. 320, 336 (1997). The current petition was filed in 2007 and, as such, is governed by the AEDPA. As amended by the AEDPA, 28 U.S.C. section 2254(d) reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2008).

Where, as here, there is no reasoned decision from the state's highest court to review, a federal court "looks through" the silent state supreme court decision to the "last reasoned opinion" issued in the state's courts. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.) In Petitioner's case, the California Supreme Court denied

---

[2] Petitioner originally put forth six claims. However, upon Petitioner's own Motion filed on November 15, 2007, Claims Five and Six of the original Petition were dismissed.

Petitioner's state petition for writ of habeas corpus without comment. (Lodgment 4.) Therefore, in reviewing Petitioner's claims, this Court looks to the reasoned opinion by the Court of Appeal for the State of California, Fourth Appellate District, dated August 31, 2006–filed with this Court as Supp. Lodgment 8–which denied Petitioner's state habeas petition. See Ylst, 501 U.S. at 801-06. The Court reviews that decision to determine whether it was contrary to, or involved an unreasonable application of clearly established federal law or whether it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

**B.   Petitioner's Claims**

In the current petition for writ of habeas corpus, (Doc. No. 1), Petitioner sets forth four claims: 1) he was prejudiced by being shackled in view of the jury; 2) the trial court erred by failing to instruct the jury pursuant to CALJIC Number 1.04; 3) Petitioner's self-representation was coerced by a "misinstruction [by the California Court of Appeal's] reversal mandate," (Doc. No. 1 at 18)[3]; and 4) Petitioner's right to self-representation was violated through harassment by the sheriff's deputies in the jail. Essentially, Petitioner is claiming his due process rights were violated by trial error in Claims one and two and Petitioner was denied his constitutional right to voluntary self-representation in Claims three and four. As such, the Court addresses the claims in that order.

**1.   Due Process**

Petitioner argues trial error resulted in a violation of his right to due process. "Trial error 'occur[s] during the presentation of the case to the jury' and is amenable to harmless-error analysis because it 'may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" Brecht v. Abrahamson, 507 U.S. 619, 629 (1993) (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)). Under Brecht, "the standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623, 637 (quoting and adopting harmless error standard created in Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In this instance, Petitioner is

---

[3] The petition's original pagination is erratic and incomplete. (See Doc. No. 1.) For clarity, the Court's citations refer to the page numbers assigned by the docketing clerk.

only entitled habeas relief if he can show prejudice. <u>Cal. v. Roy</u>, 519 U.S. 2, 5-6 (1996) (explaining harmless-error analysis).

   a. <u>Jury's Viewing of Petitioner in Shackles</u>:

  Petitioner claims that during the course of his second trial, during which he was representing himself aided by retained co-counsel, he was observed by the jury while shackled on two separate occasions: first "while being brought into the courtroom for the beginning of proceedings one morning," and "on the second occasion while being brought into the courtroom following a lunch break." Doc. No. 1 Pet at 11.) Petitioner argues that these brief observations served to deny him his constitutional rights to due process and a fair trial.

  Generally, an accused has a Fourteenth Amendment right to freedom from physical restraint during trial. See <u>Rhoden v. Rowland</u>, 172 F.3d 633 (9th Cir. 1999). In reaching their holding, the <u>Rhoden</u> court relied on the leading Supreme Court case on shackling during trials: <u>Illinois v. Allen</u>, 397 U.S. 337 (1970). In <u>Allen</u>, the Court balanced the right of a "contumacious" defendant who had a Sixth Amendment right to be present at his own trial with the safety considerations involved in granting this right. <u>Rhoden</u>, 172 F.3d at 636. Considering the alternative of severely restraining the defendant in order to conduct the trial, the Court wrote: "'no person should be tried while shackled and gagged except as a last resort' because of the distinct possibility of 'a significant effect on the jury's feelings about the defendant." <u>Id.</u> (quoting <u>Illinois v. Allen</u>, 397 U.S. at 344.) The underlying principle behind this line of reasoning is that because shackling "is an indication of the need to separate a defendant from the community at large" it would appear to create an inherent danger that the jury may gain the impression that the defendant is dangerous or untrustworthy. <u>Holbrook v. Flynn</u>, 475 U.S. 560, 568-69 (1986). As Petitioner argues, "in the presence of the jury, [the defendant] is ordinarily entitled to be relieved of handcuffs, or other unusual restraints, so as not to mark him as an obviously bad man or to suggest that the fact of his guilt is a foregone conclusion." <u>Stewart v. Corbin</u>, 850 F.2d 492, 497 (9th Cir. 1988) (internal quotations omitted) (citation omitted). Therefore, when the defendant's shackling has been visible to the jurors in the courtroom, the Court of Appeals for the Ninth Circuit has found the shackling warranted habeas relief. See <u>Spain v. Rushen</u>, 883 F.2d 712, 728-29 (9th Cir. 1989) (relief warranted where trial court abused its discretion in permitting the painful shackling of defendant's

1  hands for 17 months because the court should have considered the alternative of excluding the defendant
2  from the courtroom for periods of time). See also Tyars v. Finner, 709 F.2d 1274, 1284-85 (9th Cir.
3  1983) (unjustified restraints during involuntary commitment proceedings that were visible to the jury
4  were inherently prejudicial).

5  However, what Petitioner fails to indicate is that this line of cases applies only to instances where
6  the defendant is visibly restrained *during trial*. The Court of Appeals has stated that when the
7  defendant's shackling was not actually seen by the jury during the trial, the shackling constitutes merely
8  harmless error. See Castillo v. Stainer, 997 F.2d 669 (9th Cir. 1993). More specifically, a jury's brief or
9  inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted
10 habeas relief. See United States v. Olano, 62 F.3d 1180, 1190 (9th Cir. 1995); United States v.
11 Halliburton, 870 F.2d 557, 560-61 (9th Cir. 1989); Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th
12 Cir. 1985). Defendants in cases where the glimpse of the shackling was brief or inadvertent did not
13 demonstrate they suffered actual prejudice. Olano, 62 F.3d at 1190; Halliburton, 870 F.2d at 561.

14 In Petitioner's case, Petitioner contends members of the jury only saw him in restraints on one day
15 of the trial but on two separate occasions: on the morning of January 12, 2005 while being transported to
16 the courtroom in physical restraints, and again that afternoon while being escorted to and from the
17 courtroom following a lunch break. (Lodgment 2, 8 RT 797-98 and 888-890.) It is clear that none of
18 these instances occurred inside the courtroom or during any phase of the trial as Petitioner contends that
19 all glimpses occurred during transport to and from the courtroom. Because Petitioner was in custody at
20 the time of the trial, it was necessary to transport him in a restrained manner along with all other inmates
21 in custody as well. Moreover, the record reflects that the bailiff executing the transport of the inmates
22 made extra efforts to hide the restraints under his jacket in order to minimize their visibility to members
23 of the jury when the incident occurred. (Id. at 888-89.) Coupled with the fact that Petitioner never
24 made any affirmative requests regarding the viewings, other than to announce the incidents in open
25 court, (Lodgment 2, 8 RT 797-98 and 888-890), Petitioner has not shown he was prejudiced by these
26 instances of viewing by the jury.

27 Petitioner also argues the trial court did not consider any other reasonably available alternatives.
28 (Doc. No. 1 Pet. at 11.) To that end, Petitioner poses six possible alternatives that may have reduced or

even eliminated the possibility that any member of the jury would have seen Petitioner in restraints at any time in the courthouse. (Doc. No. 1 Pet. at 11-12.) However, due process only requires the trial court to consider less restrictive alternatives before permitting a defendant to be restrained *when the issue is necessary restraint during trial*. See Stewart v. Corbin, 850 F.2d at 497-98. Such instance is not the case here. While Petitioner may be able to hypothesize alternative methods of restraint, this exercise alone is not sufficient to outweigh the important interest in maintaining order and safety in a public courthouse. Petitioner has offered no authority for the proposition that the court should have considered any other alternatives to avoid glimpses by the jury of the Petitioner outside of trial times and as such, no prejudicial effect has been shown.

        b.    Trial Court's Failure to Give Jury Instruction:

Petitioner's second claim stems from the fact that following the two instances where the jury viewed Petitioner in shackles outside of the courtroom, the trial court failed to *sua sponte* issue CALJIC No. 1.04.[4] Petitioner argues that notwithstanding his failure to request the issuance of the instruction, the trial court should have instructed the jury anyway once they were on notice that Petitioner had been seen in restraints by members of the jury. (Doc. No. 1 Pet. at 13-17.) If the trial court had such a duty, then the failure to issue the cautionary instruction was a trial error and Petitioner can only show prejudice if the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002) (quoting Brecht v. Abrahamson, 507 U.S. at 637).

However, under People v. Jacobs, 210 Cal.App.3d 1135, 1140 (1989), the general rule requiring the *sua sponte* jury instruction in these types of instances does not apply when the criminal defendant is viewed in restraints while in transport through the courthouse. (Doc. No. 1 Pet. at 14.) Petitioner acknowledges this but argues that these decisions were incorrectly decided. (Id.) This Court disagrees. Under the clarification of Jacobs, a state court has no duty to issue such an instruction unless and until requested to do so by defense counsel. Id. at 1141.

---

[4] CALJIC No. 1.04, entitled "Defendant Physically Restrained – Cautionary Instruction," reads: The fact that physical restraints have been placed on defendant must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely.

1	In the instant matter, the record shows that Petitioner did, in fact, bring to the court's attention the
2	fact that he had been seen in restraints outside of the courtroom. However, Petitioner made no
3	affirmative request either at that moment or prior to the beginning of jury deliberations that CALJIC No.
4	1.04 be issued. Moreover, once the court took note of the instances of viewing of Petitioner in shackles,
5	the court asked Petitioner what action he requested the court take regarding the issue and Petitioner
6	never made any requests. (Supp. Lodgment 2, 8 RT 888-89.) Because Petitioner as defense counsel
7	failed to request the cautionary jury instruction, he cannot now argue that one was required especially in
8	light of the fact that the incidents occurred outside of the courtroom and never during the course of trial.
9	(Supp. Lodgment 8 Opinion at 11 (internal quotations omitted)).   In this manner, because the trial court
10	committed no error in failing to give the cautionary jury instruction absent a request from Petitioner,
11	Petitioner has failed to present a cognizable claim regarding CALJIC No. 1.04.

12	Even assuming that the failure to issue such a jury instruction amounted to trial error, Petitioner
13	would not be entitled to relief unless he made a showing that the trial error arose to the level of a due
14	process violation. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (recognizing that trial error regarding
15	jury instruction under state law could only be cognizable in federal habeas if it so infected trial it
16	violated due process). Here, Petitioner has not shown that the absence of such jury instruction was so
17	prejudicial so as to constitute a due process violation. Petitioner sets forth no evidence or argument for
18	the proposition that the failure to issue such an instruction presented such a "substantial and injurious
19	effect" so as to "determin[e] the jury's verdict." Brecht, 507 U.S. at 637. In the absence of such
20	arguments, the Court cannot determine that the absence of such an instruction amounted to trial error,
21	much less prejudicial error.

22	**2.	Right to Self-Representation**
23	Petitioner raises two claims arising from his successful request to represent himself at trial on
24	remand. First, he claims his invocation of the right to self-representation was coerced by the
25	"instruction" from the Court of Appeals. Second, he claims his right to self-representation was violated
26	by certain "actions" of the Sheriff's Deputy in charge of pro se inmates during his trial.
27	Section 2254 establishes the standard of review for habeas petition such as the case at bar. More
28	specifically, Section 2254(d) mandates the granting of habeas relief to a Petitioner in custody when the

state court's adjudication " resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined the operative review standard of § 2254(d)(1).  Justice Connor's opinion[5] explains the dichotomy between "contrary to" clearly established federal law as enunciated by the Supreme Court and an "unreasonable application of" that law.  Id. at 405.  The "contrary to" clause applies to two situations: (1) where the state court's legal conclusion is opposite that of the Supreme Court on a point of law; or (2) if the state court case is on point factually from a Supreme Court case yet the legal result is opposite.  Id. at 405-07.

On the other hand, "unreasonable application" of established law applies to mixed questions of law and fact.  Id. at 408.  This situation involves the application of law to fact where there are no Supreme Court cases factually on point which mandate the result for the precise factual scenario at issue.  Id. at 407-08.  It is this prong of the AEDPA standard of review which mandates deference be paid to state court decisions.  The deference is not automatic, however, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law[;] a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  Id. at 410-411 (emphasis in original).  Moreover, the habeas petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision under controlling Supreme Court authority.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

       a.   <u>"Forced" Self-Representation</u>:

In the current petition, Petitioner contends the Court of Appeal's decision "coerced Petitioner to continue representing himself" after the assault in jail prior to the competency hearing on remand. (Doc. No. 1 at 18.)  Petitioner argues that, after he was assaulted, just before his second trial, the Court of Appeal's order on remand – new trial if he represents himself or verdict and sentence will stand if he

---

[5] Justice O'Connor delivered the opinion of the Court with respect to Part II (except as to the footnote), concurred in part, and concurred in the judgment.

is not competent or chooses not to represent himself – "force[d] Petitioner to continue to self-represent if he wanted a new trial" although he was injured. (Lodgment 2 at 3.) It is important to note that several months after the assault in jail, the trial resumed with "two lengthy hearings" to determine whether Petitioner could continue to represent himself. (Supp. Lodgment 8 Opinion at 3-4.) In the end, Petitioner chose to continue pro per even after the trial judge informed him that he could retain counsel and continue forth with his new trial. (See Supp. Lodgment 2, 1 RT at 6-11; 2 RT at 69, 98.) Since Petitioner repeatedly alleges he was "forced" to represent himself by the language of the Court of Appeal's opinion, Petitioner is, in essence, arguing that his waiver of counsel for his second trial was *involuntary*. Petitioner's argument that his self-representation was coerced by "misinstruction," (Doc. No. 1 Pet. at 18), of the Court of Appeal further determines Petitioner is making the claim that his waiver of counsel was not knowingly and intelligently made. See Faretta v. California, 422 U.S. 806 (1975).

In Farretta v. California, the Supreme Court held that a criminal defendant has a Sixth Amendment right to conduct his own defense, provided that he knowingly and intelligently waives his right to counsel and that he is able and willing to abide by the rules of procedure and courtroom protocol. Faretta, 422 U.S. at 821. Therefore, if a defendant chooses to represent himself, his decision to do so must be made *knowingly* and *intelligently*. Faretta, 422 U.S. at 807 (emphasis added); Godinez v. Moran, 509 U.S. 389, 400 (1993). More importantly, the "knowing and voluntary" inquiry "is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." Godinez, 509 U.S. at 401.

Following Petitioner's assault in jail, the trial resumed for the purpose of conducting two hearings to determine whether Petitioner could continue to represent himself. (See Supp. Lodgment 8 Opinion at 3-4.) Petitioner had voiced his concerns about his competency to represent himself via letter written to the trial judge. (Supp. Lodgment 2, 1 RT at 4.) During the first hearing, the trial judge acknowledged Petitioner's concerns regarding the Court of Appeals' directive and repeatedly informed Petitioner that he was free to terminate his pro per status and retain counsel:

> COURT: I mean, the Court of Appeal is certainly not – I can't imagine the Court of Appeal's then going to invoke the language – I mean, if your pro per status is terminated and you go to trial, I can't imagine the Court of Appeal is then at that point seeking to invoke that language in their earlier decision."

(Id. at 8.) The trial court also clarified that in light of Petitioner's new changed circumstances, his ability to retain counsel was available to him if he believed he was not competent to represent himself:

> COURT: So I just think at this point – I think that that language in the Court of Appeal was directed more to the immediate handling of the case once it was back before this court.

(Id. at 9.) Then, to further address Petitioner's concerns about the wording of the Opinion:

> COURT: I don't think that should – that decision should be influenced by whatever lingering concern you have about that language in the earlier Court of Appeal decision. I think we're past that point.

(Id. at 10-11.) The hearing was then continued to give Petitioner even more time to carefully consider his decision whether to continue to represent himself or to retain counsel. (Id. at 44.)

Upon reconvening, the trial court went through careful motions to ensure Petitioner of the dangers and disadvantages of self-representation:

> COURT: All right. All right. Well, then perhaps the most important language, which again I'm not trying to talk you in or out of anything, but we need to – you know, you made some decisions and apparently you moved on. But the concluding language in the letter says "compiled with my head injuries is becoming a task that only a professional attorney can handle. As of this moment I don't see myself capable of presenting the case. So I ask your advice and wisdom because I don't want to waste the court's time, waste taxpayers' money" and so forth. I think I've indicated I can't give you any advice or wisdom in terms of legal advice. I think you're doing fine. I don't have any question about your competency to represent yourself. I may have the same concern I think most judges have about a decision to represent yourself and about the wisdom of that and whether she'll do as an attorney might do, so I don't have any right to think about your decision. I think you're capable of presenting the case. Now in retrospect, whether you'll be satisfied or whether somebody reviewing it would think it's as good as God would have done with it, it's not a question of whether you will or you have done a good job representing yourself. It's a question of whether you made a free and voluntary decision to do so. And you have the right to make what the court might think is an unwise decision. As I understand it now you're going to continue to represent yourself and we're going to proceed forth and that's fine with me. We'll do it on that basis. That's the basis you wanted to proceed. I just wanted to make a little further record as to some of the matters you mentioned in your letter. You don't want to say anything?
> DEFENDANT: I understand.

(Id. at 97-98.)

It is clear from the amount of time the court spent on the issue that the trial judge was careful to make Petitioner aware of the repercussions of representing himself at trial. The trial judge made more than several mentions of the fact that Petitioner was not required to adhere to his pro per status to obtain a retrial. To the extent the trial judge carefully notified Petitioner that the Court of Appeal's instruction

had no bearing on his ability to go forth with a new trial, the Court finds that Petitioner's decision to represent himself at trial was knowing and made voluntarily.

Additionally, the Court of Appeal for the Fourth Appellate District considered the issue and denied relief. (Supp. Lodgment 8.) The court stated:

> Our review of the relevant trial transcripts show that this claim has no basis in fact. The trial court made clear to Garcia that he was entitled to a retrial whether or not he chose to continue to represent himself. The record shows that the trial held two lengthy hearings to help Garcia decide whether to continue to represent himself after he was seriously injured, and at both of those hearings the trial court emphasized that because his injuries constituted a changed circumstance, our previous direction on how the case should be handled on remand would *not* prevent Garcia from going forward with the retrial if he chose to no longer represent himself.

The state court's conclusion in this regard is a reasonable construction of the facts of this case. There is nothing in the record indicating that Petitioner was forced to represent himself by the instruction of the Court of Appeal when the trial court clearly explained to him that under the changed circumstances, he was not only entitled to a new trial but to counsel if he chose to retain such. Moreover, the record shows that although Petitioner may have had some doubts about self-representation, he ultimately chose to pursue that path. Ultimately, Petitioner's claim that his decision to represent himself was coerced or rendered involuntary by the Court of Appeal's instruction is not supported by the record. The record instead reflects that Petitioner was made aware of the disadvantages of self-representation and he voluntarily chose to waive his right to counsel. On this issue, Petitioner has not met his burden of showing that the state court rendered a decision contrary to or involving an unreasonable application of federal law and as such he should not be entitled to relief on this claim.

        b.    <u>Interference With Self-Representation</u>:

Petitioner's last claim alleges that Deputy Grimm, the sheriff's deputy in charge of pro per inmates at San Diego County Jail, committed various acts including invalid searches and confiscation of Petitioner's legal property "which hindered and denied any opportunity to prepare an adequate defense in preparation for trial." (Doc. No. 1 Pet. at 30-31.)

Petitioner presents various incidents under this claim. Namely, Petitioner alleges he was moved throughout the San Diego County jail system numerous times during trial (<u>Id.</u> at 33); Deputy Grimm searched his cell at a time during trial (<u>Id.</u> at 34); Petitioner's legal runner was not allowed to visit Petitioner in jail on a certain date (<u>Id.</u>); and Petitioner was placed in ankle and waist restraints on the

date of sentencing. (Id. at 34-35.) However, all of these incidents appear consistent with normal operations of corrections facilities. Petitioner presents no authority which indicates that any of these actions were either unlawful or prejudiced his defense at trial in any way. Moreover, the Court notes that although Petitioner may have experienced some difficulty in presenting his case because of the number of witnesses and complexity of the issues, he appeared familiar with court proceedings and represented himself competently and reasonably well. (See Supp. Lodgment 2, Volumes 7-15.)

Lastly, the Court of Appeal rejected Petitioner's claim and reasoned as follows:

> "We have reviewed the materials submitted by Garcia in support of his claim. Without evaluating whether there is any evidence that the harassment actually occurred, we conclude that Garcia has not submitted evidence establishing that the alleged harassment impacted his ability to adequately represent himself during trial and posttrial proceedings. In fact, the record before us in Garcia's appeal shows that Garcia extensively participated in all phases of the proceedings and, when necessary and appropriate, was accommodated by the trial court when difficulties were posed by his status as an incarcerated defendant representing himself in pro per. Garcia has, accordingly, failed to state a prima facie case for relief."

(Supp. Lodgment 8 Opinion at 13.) The state court's conclusion is reasonable here based on the facts of this case. Therefore, absent federal authority on point, because the decision of the California Court of Appeal that Petitioner's constitutional rights were not violated by the actions of the corrections staff during his trial is not contrary to or an unreasonable application of United States Supreme Court authority, it should not be set aside. The Court finds Petitioner is not entitled to relief on this claim.

## IV.

## CONCLUSION

The Court submits this Report and Recommendation to United States Chief District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered DENYING the Petition for Writ of Habeas Corpus.

   **IT IS ORDERED** that no later than **January 22, 2009** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

1  **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
2  served on all parties no later than **February 12, 2009**.  The parties are advised that failure to file
3  objections within the specified time may waive the right to raise those objections on appeal of the
4  Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d
5  1153, 1156 (9th Cir. 1991).

6  **IT IS SO ORDERED**.

7  DATED: December 18, 2008

   Peter C. Lewis
   U.S. Magistrate Judge
   United States District Court

11 cc:  The Honorable John A. Houston
        All Counsel of Record